**In re H & S TRANSPORTATION CO., INC., Debtor.**

**C. Bennett HARRISON, Jr., Trustee, Plaintiff-appellee,**

**v.**

**BRENT TOWING COMPANY, INC., Defendant-appellant.**

**C. Bennett HARRISON, Jr., Trustee,**

**v.**

**UNITED LIBERTY LIFE INSURANCE COMPANY, Defendant-appellant.**

Bankruptcy No. 381–02803.
Nos. 3:88–0048, 3:88–0049.
Adv. Nos. 383–0586, 383–0585.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 5, 1990.

---

C. Bennett Harrison, Jr., Cornelius & Collins, Nashville, Tenn., for debtor and plaintiff-appellee.

Gullett, Sanford, Robinson & Martin, M. Taylor Harris, Jr., Nashville, Tenn., Kevin E. Irwin, Cincinnati, Ohio, pro hac vice, for United Liberty Life Ins. Co.

B. Gail Reese, Nashville, Tenn., Warren Ashley Hines, Greenville, Miss., for Brent Towing Co., Inc.

## MEMORANDUM

WISEMAN, Chief Judge.

This case involves an attempt by the trustee in bankruptcy to recover preferences allegedly created when the debtor paid certain fuel bills within 90 days of filing its bankruptcy petition. For the reasons stated below, the Court finds that the trustee may not recover the payments at issue from the defendant-appellants. Ac-

cordingly, the February 17, 1987 ruling by the Bankruptcy Court for the Middle District of Tennessee in this case will be reversed and that court's judgment vacated.

## PROCEDURAL HISTORY

The debtor, H & S Transportation Co. (H & S) filed its Chapter 11 bankruptcy petition on September 4, 1981. The trustee initiated proceedings against United Liberty Life Insurance Co. (United) and Brent Towing Company, Inc. (Brent) in October of 1983 to recover, as avoidable preferences, payments which were made by H & S to fuel suppliers during the 90–day prepetition preference period. The matter was tried before Middle District Bankruptcy Judge George C. Paine on March 13, 1985. On February 17, 1987, Judge Paine held that the trustee could recover $149,586.98 from United and $26,250.73 from Brent. *In re H & S Transportation Co., Inc.*, 80 B.R. 441 (Bankr.M.D.Tenn.1987). On September 30, 1987, the bankruptcy court granted the trustee's motion to amend the judgment to add pre-judgment interest for a total amount against United of $199,526.81 and against Brent of $35,013.61. 78 B.R. 519 (Bankr.M.D.Tenn.1987).

Middle District Senior Judge Charles G. Neese[1] reversed the bankruptcy court on August 11, 1988 on the grounds that neither Brent nor United were "creditors" of H & S for purposes of the Bankruptcy Code. 90 B.R. 309 (M.D.Tenn.1988). The Sixth Circuit reversed and remanded the case for consideration of the issues raised by United and Brent which were not addressed by Judge Neese in his first ruling. 878 F.2d 381; 878 F.2d 382 (6th Cir.1989). Finally, on July 12, 1989, Judge Neese granted a motion by United to permit the filing of supplemental briefs.

## FACTS

United owned the towboat VOLUNTEER STATE and Brent owned the MARGARET BRENT. Inland Transportation Company (ITC) chartered these boats from United and Brent and hired H & S to operate them. During the 90–day period before H & S filed its bankruptcy petition, the debtor paid various suppliers for fuel which it had earlier purchased on credit. The trustee contends that when H & S paid off its debts with the suppliers, United and Brent received indirect preferences. The payments were said to have released maritime liens that had automatically attached to the boats in the suppliers' favor when they supplied fuel to H & S. The bankruptcy court agreed with the trustee. Judge Neese, however, held that no liens had attached to the boats because the charter contract for each boat included a clause prohibiting the attachment of maritime liens or other encumbrances. 90 B.R. at 312. The Sixth Circuit reversed, noting that a 1971 amendment to the maritime lien provisions in the United States Code permitted a supplier to acquire a maritime lien despite any "prohibition clause" in the charter contract, except when the supplier has actual knowledge of the prohibition. No. 88–6168, slip op. at 5 (6th Cir. June 23, 1989) [878 F.2d 381 & 382 (tables)].

## STANDARD OF REVIEW

Bankruptcy Rule 8013 provides that the bankruptcy court's findings of fact may be reversed only if "clearly erroneous." The bankruptcy court's conclusions of law, however, are "fully reviewable on appeal." *Matter of Multiponics, Inc.*, 622 F.2d 709, 713 (5th Cir.1980).

## DISCUSSION

The Court will consider the following issues raised by United and Brent on appeal: 1) Was there an avoidable transfer under the Bankruptcy Code which the trustee may recover from these defendants? 2) Are United and Brent entitled to the § 547(c)(4) subsequent new value defense? 3) To be avoided, must an allegedly preferential transfer diminish the debtor's estate? 4) Did the trustee sustain his burden of proving that H & S was insolvent at the time of the transfers in question?

The trustee "objects to the new issues raised for the first time in this Court following the remand from the Court of Appeals." *Trustee's Reply to Supplemental Briefs* at 1. The trustee argues that every

---

1. Judge Neese passed away on October 22, 1989.

issue which requires any factual findings must first be presented to the bankruptcy court. The trustee also contends that United and Brent have waived these "new issues" by failing to include them in the statement of issues filed by them as required in Bankruptcy Rule 8006. The issues alleged by the trustee to be "new" involve the § 547(c)(4) subsequent new value defense.

■ *In re Caldwell*, 851 F.2d 852 (6th Cir.1988), holds that a district court reviewing a bankruptcy court ruling is subject to the same limitations imposed on any appellate tribunal. Generally, affirmative defenses are waived if not raised in the trial court. *Smith v. Horner*, 839 F.2d 1530, 1534 (11th Cir.1988). *See also Roberts v. Berry*, 541 F.2d 607, 610 (6th Cir.1976). The Supreme Court, however, has indicated that this is not a hard and fast rule. *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826, 837 (1976) ("Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, or where 'injustice might otherwise result.'" (citation omitted)).

■ This Court believes there is no barrier to its consideration of the § 547(c)(4) defenses offered by United and Brent. First, it is by no means clear that these issues were not raised in the bankruptcy court. Both United and Brent raised the § 547(c)(4) subsequent new value defense in some form in the pretrial order, but they used different facts to support their arguments under that section. In addition, the bankruptcy court specifically stated that "United and Brent also raise the § 547(c)(4) defense." 80 B.R. at 447. Therefore, United and Brent did raise in the bankruptcy court all the issues they have presented in this appeal.

Second, and in conjunction with the reason stated above, deciding the new value defense does not require this Court to make any independent findings of fact. The facts upon which United and Brent now rely to support their § 547(c)(4) defense were stipulated in the pre-trial order.

Finally, any failure by United and Brent to include in their Rule 8006 statement the issues they now raise does not prevent this court from considering those issues at this time. Bankruptcy Rule 8006 "'is not intended to bind either party to the appeal as to the issues that are to be presented.'" *In re Cohoes Industrial Terminal, Inc.*, 90 B.R. 67, 70 (S.D.N.Y.1988) (quoting Norton's Bankruptcy Rules, Rule 8006 (Editor's comments), p. 750). *But see In re Pine Mountain, Ltd.*, 80 B.R. 171, 173 (9th Cir. B.A.P. 1987) (appellant's failure to include issue in the Rule 8006 statement resulted in waiver of the issue, but the panel went on to decide the issue, "assuming" it was before them).

*1) Was there an avoidable transfer under the Bankruptcy Code which the trustee may recover from United and Brent?*

■ In a ruling related to the instant case, bankruptcy Judge Paine held that the payments made by H & S to the fuel suppliers during the 90–day prepetition period could not be recovered from those suppliers because "sufficient amounts of new value were extended [to H & S] subsequent to the preferential transfers to offset these transfers." *In re H & S Transportation Co. (Harrison v. St. Louis Fuel & Supply Co., Inc.)*, 45 B.R. 233, 239 (Bankr.M.D. Tenn.1984). United and Brent contend that the trustee is therefore also precluded from recovering the transfer from them. Section 547(b) of the Bankruptcy Code defines the transfers that may be recovered by the trustee as preferences. Section 547(c) establishes certain exceptions to the transfers otherwise recoverable under § 547(b). Section 547(c)(4) states that the trustee may not avoid a transfer "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor." Finally, § 550 governs from whom the trustee may recover payments "to the extent that a transfer is avoided under section ... 547."

United and Brent argue that they are entitled to defend this action by invoking the suppliers' new value defense. They

argue that since the bankruptcy court has held that the transfer from H & S to the suppliers is not avoidable, then the trustee may not now use § 550 to recover the transfer from United and Brent. The bankruptcy court disagreed, holding that "[u]nder § 550, two preferential transfers may result from one transaction. Courts analyze each transaction separately in order to determine whether the trustee may recover against a specific creditor." 80 B.R. at 448 (citing *In re Mercon Industries*, 37 B.R. 549, 522 (Bankr.E.D.Pa. 1984)). Thus the issue, in its simplest form, is whether there can be two "transfers" resulting from one payment made by H & S to a creditor.

The "two transfer" theory relied upon by the bankruptcy court has not previously been discussed by any courts in the context of the fact situation presented in this case. The concept has been discussed extensively, however, in cases where a trustee has attempted to avoid a transfer to a non-insider creditor which benefits a guarantor who is an insider of the debtor. The preference recovery period for transfers to an insider is one year, rather than the normal 90–days for non-insiders. 11 U.S.C. § 547(b)(4)(B). Section 550 allows the trustee to recover a transfer avoided under § 547(b) from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." In many cases a debtor has borrowed money from a non-insider lender and had the loan guaranteed by an insider guarantor. When the debtor makes a payment to the non-insider bank within one year of filing for bankruptcy, the trustee may attempt to recover that payment as an avoidable preference since the payment benefited an insider guarantor. The two transfer theory allows a court to avoid the apparent inequity of recovering payment from a non-insider lender outside the usual 90–day preference period. The court can allow extended recovery from the guarantor and not the lender by viewing the single payment *to* the lender and *for the benefit* of the guarantor as two separate transfers.

The two circuits which have addressed the issue, have determined that the "two

transfer" theory is unsound. *In re Robinson*, 892 F.2d 850 (10th Cir.1989) and *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989).

> The two-transfer approach equates "transfer" with "benefit received." Both Lender and Guarantor gain from payment and each receives a "transfer" to the extent of the gain. The Code, however, equates "transfer" with payments made. Section 101(50), ... says that a transfer is a disposition of property. Sections 547 and 550 both speak of a transfer being avoided; *avoidability is an attribute of the transfer rather than of the creditor*. While the lenders want to define transfer from the recipients' perspective, the Code consistently defines it from the debtor's. A single payment, therefore is one "transfer", no matter how many persons gain thereby.

*Levit*, at 1195–96 (emphasis added).

The district court opinion in the *Levit* case also supports the position of United and Brent. *See In re V.N. DiPrizio Construction Co.*, 86 B.R. 545 (N.D.Ill.1988). Judge Plunkett explicitly disagreed with the *In re Mercon* case upon which Judge Paine relied:

> We believe *Mercon* ... misperceived the nature of a "transfer" under the Code. Section 550 expressly recognizes that one transfer may benefit both an outsider creditor and an insider guarantor and permits recovery from either the "initial transferee" or "the entity for whose benefit the transfer was made." Given that clear dichotomy in section 550, it is anomalous to suggest that one payment constitutes two transfers under section 547.... The Code says that a transfer occurs when someone "dispos[es] of or part[s] with property or an interest in property." ... If Congress had wanted a transfer to occur whenever someone receives a benefit, it could have defined "transfer" as "receiving or acquiring property or an interest in property." If Congress had used such language, we would agree with *Mercon* that every entity receiving a benefit receives a "transfer." But Congress did not;

thus, we must conclude that a transfer is an act disposing of or parting with property.

*Id.* at 551. Also in accord is *Matter of Midwestern Companies, Inc.*, 102 B.R. 169 (W.D.Mo.1989). Referring to the *In re Mercon* decision, the *Midwestern Companies* court said: "Curiously, one court concluded that a single payment was two transfers; one to the primary creditor, and one to the guarantor." *Id.* at 171.

The rejection of the "two transfer" theory in the insider/outsider preference period context is applicable to the instant case. The Bankruptcy Code established a bifurcated system, whereby § 547 defines which transfers may be avoided and § 550 determines how the trustee can recover transfers thus avoided. In this case, the bankruptcy court held that the transfer from H & S to the fuel suppliers could not be avoided. Since the transfer has not been avoided, the trustee cannot recover it from United and Brent any more than he can recover it from the suppliers.

Additionally, § 550(c) provides that "the trustee is entitled to only a single satisfaction" for each transfer. The trustee is allowed to avoid certain transfers to creditors within 90 days of the bankruptcy filing as "preferential" to those creditors. When the creditor has given "new value" for the preferential transfer, however, the trustee is not allowed to avoid the transfer. Effectively, the new value given amounts to a "satisfaction" of the transfer the creditor received. Thus, in this case, the trustee has received a satisfaction for the transfer to the fuel suppliers inasmuch as H & S received new value from the suppliers. To allow recovery also from United and Brent would amount to two satisfactions of a single transfer.

*2) Are United and Brent entitled to the subsequent new value defense?*

■ Even if the trustee was entitled to attempt recovery of the transfer in this case from United and Brent, they, like the fuel suppliers, are entitled to the § 547(c)(4) subsequent new value defense. Although the bankruptcy court held that United and

Brent had failed to prove the extension of new value, in view of the facts before the Court, that holding is clearly erroneous.

United gave new value by virtue of the debtor's continued operation of the VOLUNTEER STATE during the 90–day preference period. H & S's operation of the vessel resulted in over $390,000 worth of new liens for fuel purchased on credit by H & S. If the extinguishing of maritime liens was a benefit to United and diminished the debtor's estate, then the creation of new liens as security for H & S's new fuel purchases must be new value.

Brent extended new value in three ways. First, Brent provided $33,792.67 in repair services to H & S after the transfers from H & S to the fuel suppliers. The trustee contends that H & S had no contract with Brent, and thus no contractual duty to Brent to repair the vessel. H & S, however, was obligated under its contract to keep the MARGARET BRENT in good repair. Whether that obligation was owed to Brent or someone else is irrelevant. The parties stipulated that Brent provided the repairs and H & S failed to pay for those repairs. The repairs were new value, benefitting the debtor.

Second, Brent gave new value by allowing H & S to continue to operate the MARGARET BRENT for three months for which Brent received no payments. Since the rate of the charter hire for that period was $1,000 per day, Brent argues that it effectively advanced new value of $66,000. The unpaid amounts for the charter hire were not stipulated in the pre-trial order. There was testimony at trial, however, that H & S did operate the boat for three months without Brent receiving any payments. *Bankruptcy Court Transcript of Proceedings for May 8, 1985* at 124–25. This free use of the vessel also clearly constitutes new value which was given by Brent to the debtor.

Finally, Brent, like United, is entitled to credit for new value given to H & S by virtue of maritime liens which attached to the MARGARET BRENT. These liens attached when H & S purchased supplies for

the vessel after the date of the transfer sought to be avoided by the trustee.

### 3) To be avoided, must an allegedly preferential transfer diminish the debtor's estate?

■ The Bankruptcy Code does not explicitly require proof of the diminution of the estate in a preference action. The old Bankruptcy Act also contained no such explicit requirement, but depletion of the estate was an implied requirement of a preference action under that Act. *See In re Abramson*, 715 F.2d 934 (5th Cir.1983). The bankruptcy court in this case held that although some courts continue to imply a requirement of depletion of the estate under the new act, it was "unconvinced that the Code requires such a showing." 80 B.R. at 446. One of the cases relied upon by the bankruptcy court was *In re Hartley*, 55 B.R. 770 (Bankr.N.D.Ohio 1985). That case was reversed by the Sixth Circuit, however, at 825 F.2d 1067 (6th Cir. 1987). The Sixth Circuit explicitly held that a trustee may only recover an otherwise preferential transfer to the extent that the transfer depletes the estate. *Id.* at 1071. Only when the estate is depleted are "the other creditors injured because less remains for them to share." *Id* at 1070. Depletion of the estate, therefore, remains an essential element to be proven by the trustee in a preference action.

Despite being unconvinced of the requirement of depletion of the estate, the bankruptcy court went on to hold that "even under the assumption that such a test exists, the court finds that it has been met." 80 B.R. at 446. H & S actually chartered the two vessels involved in this case from Inland Transportation Company (ITC). ITC chartered the boats from United and Brent. The bankruptcy court found that H & S "invoiced ITC for [operating the boats] in advance on a monthly basis and for expenses as they became due." 80 B.R. at 442. Therefore, every fuel payment made by H & S was offset by an account receivable on H & S's balance sheet such that its estate was not diminished by the transfers to the fuel suppliers. The bankruptcy court made no factual finding that these accounts receivable were worthless. This Court must conclude, therefore, that the trustee failed to meet his burden of proving that the debtor's estate in this case was diminished. Accordingly, the bankruptcy court's findings on this issue are clearly erroneous and are reversed.

### 4) Did the trustee sustain his burden of proving that H & S was insolvent at the time of the transfers in question?

In order to avoid a transfer by the debtor to a creditor, the trustee must also prove that the debtor was insolvent at the time of the transfer. 11 U.S.C. § 547(b)(3). Section 547(f) of the code provides for a presumption of insolvency during the 90–day period immediately before the debtor files his petition. In order to rebut the presumption, the defendant in a preference action must introduce evidence that the debtor was solvent during the 90–day period.

■ The bankruptcy court held that the trustee had established insolvency through the use of the presumption in § 547(f) and the professional opinion of an accountant expert witness. United and Brent complain that because the expert denied having any expertise in determining fair value, the bankruptcy court erred by accepting his testimony as proof of fair value. *See Bankruptcy Court Transcript of Proceedings on May 8, 1985* at 85. They also complain that the sworn bankruptcy schedules of the debtor were not admitted as evidence of the positive net worth of the debtor during the 90–day period. It appears that the bankruptcy court properly refused to admit the debtor's schedules into evidence inasmuch as it was shown that the figures in that document did not represent the fair value of the debtor's assets. The determination of insolvency is a factual determination. Because the bankruptcy court's finding that H & S was insolvent at the time of the transfers in question does not appear to be clearly erroneous, it will be affirmed.